

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00258-CV

**IN THE INTEREST OF J.M.O.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-01766
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Marialyn Barnard, Justice
         Patricia O. Alvarez, Justice
         Luz Elena D. Chapa, Justice

Delivered and Filed:  August 12, 2015

AFFIRMED

Appellant J.D.O. appeals the trial court's order terminating his parental rights to his child

J.M.O.  J.D.O. asserts the evidence is neither legally nor factually sufficient for the trial court to

have found by clear and convincing evidence that terminating his parental rights is in J.M.O.'s

best interest.  Having reviewed the evidence, we conclude the evidence is both legally and factually

sufficient to support the finding, and we affirm the trial court's order.

### BACKGROUND

J.D.O. testified that while he "was on the run hiding from [a] new robbery case so I

wouldn't go to jail, . . . I had my six month old [child (J.M.O.)] with me."  Later, J.D.O. gave

J.M.O. to his sister to care for.  While J.D.O.'s sister had J.M.O., the Department interviewed

J.D.O.'s sister to try to locate J.M.O.  J.D.O.'s sister initially denied she was keeping J.M.O., but

after three weeks and more questions from the Department, J.D.O.'s sister admitted she had J.M.O. J.M.O. was removed into Department custody and placed in foster care.

While J.D.O. was on the run, J.M.O.'s mother was murdered. When J.D.O. was apprehended, he was being investigated as a suspect in his wife's murder. While J.D.O. was incarcerated on other charges, the Department was appointed J.M.O.'s Temporary Managing Conservator. The Department created a family service plan for J.D.O. While he was in prison, J.D.O. completed a drug abuse treatment program, a parenting class, a cognitive intervention class, and a trade class.

In April 2015, J.D.O. was represented by court-appointed counsel at a one day bench trial. J.D.O. participated by telephone because he was in prison. The trial court terminated J.D.O.'s parental rights, and he appeals. He asserts the evidence is neither legally nor factually sufficient to support the trial court's finding that terminating his parental rights was in J.M.O.'s best interest.

STANDARDS OF REVIEW

If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that (1) the parent committed one of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2015); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002).

A.    Legal Sufficiency

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines [a] reasonable factfinder could form a firm belief or conviction that the matter that

must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

**B.  Factual Sufficiency**

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

### BASES FOR TERMINATION

**A.  J.D.O.'s Course of Parental Conduct**

The trial court found by clear and convincing evidence that J.D.O.'s conduct was grounds for termination under subparagraphs (D), (E), (N), and (O) of section 161.001(b)(1). *See* TEX. FAM. CODE ANN. § 161.001(b)(1). On appeal, J.D.O. does not challenge the trial court's statutory grounds findings.

**B.  Best Interest of J.M.O.**

Instead, J.D.O. challenges the sufficiency of the evidence that terminating his parental rights is in J.M.O.'s best interest. *See id.* § 161.001(b)(2). We briefly review the law pertaining to determining the best interest of the child. The factors a court uses to ascertain the best interest of the child may include the following:

> (B) the emotional and physical needs of the child now and in the future;
> (C) the emotional and physical danger to the child now and in the future;
> (D) the parental abilities of the individuals seeking custody;
> . . .
> (G) the stability of the home or proposed placement;
> (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)    any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).

Applying each standard of review, we examine the evidence pertaining to the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re E.N.C.*, 384 S.W.3d at 807; *In re J.F.C.*, 96 S.W.3d at 284.

### EVIDENCE OF BEST INTEREST OF THE CHILD

At the one-day bench trial, the trial court heard testimony from J.D.O. and the Department case worker, and recommendations from J.M.O.'s guardian ad litem.

### A.    J.D.O.'s Testimony

J.D.O. testified to the following facts. When he was growing up, his mother and father were "crack heads," and his mother was a prostitute. He "started selling crack at a young age, . . . that's how I made my money." He was in prison for possession of a controlled substance, theft, and unauthorized use of a vehicle. He admitted he had "a tattoo on [his] abdomen with Roman numerals for 2 and 10"—a symbol used by Orejon gang members—but insisted he was "not affiliated with those people." He admitted he left J.M.O. in his mother's care, but stated that his mother and father do not use crack anymore. He would be released from prison in three months, and he planned to get a job as an auto mechanic and live with his sister until he could save enough money to buy his own house.

### B.    Caseworker's Testimony

Jennifer Crippen, the Department case worker for J.D.O., testified as follows. She recommends that J.M.O. stay with the current placement family. J.M.O. is bonded to her current foster parent and is thriving. J.M.O. has no relationship with J.D.O., and if J.D.O. were to regain conservatorship of J.M.O., J.M.O. would live with J.D.O.'s sister—the one who had lied to the

Department to hide J.M.O.  J.D.O. was not a good parent for J.M.O. because he had placed J.M.O. with J.D.O.'s mother, and there was an ongoing history of family violence in that home and a history of drug abuse and other criminal conduct.  In contrast, J.M.O.'s foster home is drug-free, J.M.O. is very bonded to the current caregiver, and J.M.O. is developmentally above average.

## C.      Ad Litem's Recommendation

When the court asked J.M.O.'s guardian ad litem for her recommendation, Rosa Gonzales advised the court that she has an "extensive history with both [J.M.O.'s] father and [J.M.O.'s] deceased mother, and their course[s] of conduct with three other children that were terminated throughout the time that I've been appointed to this family."  She expressed her concern that if J.M.O. was returned to J.D.O.'s care when he was released from prison, J.D.O. would return to his past practices and J.M.O. "would be put at risk of violence and [in] an environment in which drug dealing and prostitution is an every[-]day occurrence in the home."  Ms. Gonzales recommended that J.M.O. remain in the foster placement where J.M.O. is "a very happy child" and "thriving and excelling developmentally."

### J.D.O.'S PARENTAL RIGHTS

The trial court heard testimony that J.D.O. had a multi-year history of selling drugs; had been convicted of possession of a controlled substance, theft, and unauthorized use of a vehicle—which stemmed from a crack cocaine transaction—and took six-month-old J.M.O. with him while he was "on the run hiding from [a] new robbery case so I wouldn't go to jail."  *See Holley*, 544 S.W.2d at 372 (factors (B), (C)).  The trial court could have believed that if J.D.O. regained conservatorship of J.M.O. and J.D.O. returned to selling drugs, J.D.O.'s conduct would again endanger J.M.O.  *See id.* (factors (B), (C), (H)).  The court could have reasoned that if J.M.O. was returned to J.D.O.'s care, J.D.O.'s plan to live with his sister and his past willingness to leave

J.M.O. in his mother's care would continue to put J.M.O.'s physical health and emotional development in danger. *See id.* (factors (B), (C), (H), (I)).

The court could also have believed the testimony that allowing the foster parent caregiver to adopt J.M.O. was in J.M.O.'s best interest because J.M.O. is bonded to the caregiver; the caregiver is providing a safe, stable environment for J.M.O., and as a result, J.M.O. is developmentally above average; and adoption into the foster family would protect J.M.O. from J.D.O.'s history of family violence. The court could have concluded that J.M.O.'s present and future physical health and emotional development would be best protected in the foster parent's home. *See id.* (factors (B), (C), (D), (G)).

Reviewing the evidence under the two standards, we conclude the trial court could have formed a firm belief or conviction that terminating J.D.O.'s parental rights to J.M.O. was in J.M.O.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 27. Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 27.

## CONCLUSION

J.D.O. does not challenge the trial court's findings that his course of conduct comprises multiple bases to terminate his parental rights. Instead, he argues the evidence is neither legally nor factually sufficient to support the trial court's finding by clear and convincing evidence that terminating his parental rights is in J.M.O.'s best interest.

Having examined the evidence under the applicable standards of review, we conclude the evidence pertaining to the trial court's findings is both legally and factually sufficient for the trial court to have found by clear and convincing evidence that terminating J.D.O.'s parental rights to J.M.O. was in J.M.O.'s best interest. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice